Jennifer A. Mauri (SBN 276522)
Email: jmauri@onellp.com
John Tehranian (SBN 211616)
Email: jtehranian@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorney for Plaintiff,
HOLLYWOOD UNIVERSE MEDIA, LLC, d/b/a
PASSION BUILDERS ONLINE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLYWOOD UNIVERSE MEDIA, LLC, a California limited liability company, d/b/a PASSION BUILDERS ONLINE,<br><br>                Plaintiff,<br><br>        v.<br><br>MATTHEW BROCKMAN, an individual; THEBROCKCONSULTING, LLC, a Nevada limited liability company; and DOES 1-10, inclusive,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) TRADE SECRET MISAPPROPRIATION (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ET SEQ.);**<br>**(2) TRADE SECRET MISAPPROPRIATION (CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE §§ 3426-3426.11);**<br>**(3) BREACH OF CONTRACT;**<br>**(4) FALSE ADVERTISING (15 U.S.C. § 1125(a));**<br>**(5) FALSE AND MISLEADING ADVERTISING (CAL. BUS. & PROF. CODE § 17500);**<br>**(6) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200); AND**<br>**(7) UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Hollywood Universe Media, LLC, d/b/a Passion Builders Online ("Passion Builders" or "Plaintiff"), by and through their attorneys of record, complains against Defendants Matthew Brockman ("Brockman"), TheBrockConsulting LLC ("BrockConsulting"), and DOES 1-10, inclusive (collectively "Defendants"), alleging as follows:

## JURISDICTION AND VENUE

1.      This is a civil action against Defendants for their violations of the Lanham Act, 15 U.S.C. § 1125 et seq. and the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., as well as for breach of contract and state common and statutory law violations, including false and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500 and unfair competition under Cal. Bus. & Prof. Code § 17200.

2.      This Court has subject matter jurisdiction over this action as a federal question under 28 U.S.C. § 1331, 28 U.S.C. §1338, 15 U.S.C. § 1125, and 18 U.S.C. 1836.

3.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's remaining causes of action, as the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts under article III of the United States Constitution.

4.      This Court also has federal diversity jurisdiction over Defendants under 28 U.S.C. § 1332, as Plaintiff is a citizen of California and Defendants are each citizens of Nevada, and the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over Defendants because the Defendants' principal place of business is in the State of California, and because the Defendants have extensive contacts with and conduct business within the State of California and this judicial district. Further, Defendants have made false and/or misleading statements in their advertising in this district, thereby harming

2

**COMPLAINT**

consumers, as well as competitors such as Plaintiff, in this district, and thereby causing injury to Plaintiff in this judicial district.

6.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), in that the claim arises in this judicial district, Defendants may be found and transact business in this judicial district, and the injury suffered by Plaintiff took place in this judicial district.

## PARTIES

7.    Plaintiff is a California limited liability company with its principal place of business in Pasadena, California.

8.    Defendant Brockman is an individual who, on information and belief, resides in Las Vegas, Nevada.

9.    On information and belief, Defendant BrockConsulting is a Nevada limited liability company with its principal place of business in Los Angeles, California, and is a business form unknown.

10.    Defendant Brockman is the owner, and on information and belief, the alter ego, of Defendant BrockConsulting.

11.    On information and belief, Brockman and BrockConsulting purport to be the entities that own and operate the website www.brocksales.com.

12.    On information and belief, Brockman and BrockConsulting purport to be the owners and operators of various social media accounts, including as least the "Matt Brockman – Trumpeter, Producer, Arranger" account on Meta (f/k/a Facebook).

13.    On information and belief, Brockman and BrockConsulting purport to be the owners and operators of the "B2C Sales Bootcamp" and "7 Figure Creative Coaches" communities on www.skool.com.

14.    On information and belief, Defendants are all alter egos of each other that operate the above-described websites, social media accounts, and skool.com communities.

3

**COMPLAINT**

15.    DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  The DOES may be other individuals or legal entities that stand behind the websites, social media accounts, skool.com communities, or other defendants.  Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained.  Plaintiff is informed and believes, and upon such alleges, that each of the Defendants designated herein as a "DOE" are legally responsible in some manner for the events and happenings herein alleged, and that Plaintiff's damages as alleged herein were proximately caused by such Defendants.

## BACKGROUND FACTS

16.    Paul Nowell, also known as "Paul the Trombonist", is a well-known multi-talented artist rooted in Los Angeles, boasting roles as a music producer, songwriter, entrepreneur, performer, educator, YouTuber, and esteemed trombonist. His diverse skill set has led to private performances for a star-studded audience that includes names like Leonardo DiCaprio, Martin Scorsese, and Charlize Theron, among others. Garnering tens of millions of views, his original content videos stand testament to his growing acclaim. Mr. Nowell has creatively collaborated on projects with Ron Ellington Shy, has performed with jazz icon Chico Hamilton's band, performed in a worldwide tour with the Glenn Miller Orchestra, and participated in the Tony-award-winning "best musical" *Memphis*, written by Bon Jovi's keyboardist, David Bryan. Mr. Nowell collaborated with the ten-time Grammy awardee Arturo Sandoval to create a series of online videos that saw a meteoric rise to fame, captivating millions globally. Mr. Nowell has also done collaborative performances with the renowned comedian Sinbad, amalgamating music and humor in an unprecedented style. His rich portfolio further extends to performances with soul music royalty Aretha Franklin, Seth MacFarlane, Frankie Valli, and Noel Gallagher. Additionally, Mr. Nowell collaborated with Phil Wilson to create "Bone Masters," a pioneering internet show helmed by Mr. Nowell,

4

**COMPLAINT**

wherein he engages with living legends of the trombone world, orchestrating masterclasses and interviews, thereby creating the most expansive educational video library dedicated to the trombone.

17.    Aside from his musical endeavors, Mr. Nowell is a well-recognized name in the online business arena as, among other accolades, the founder and Chief Executive Officer of Passion Builders Online.

18.    Passion Builders is an online coaching company based in Pasadena, California that provides training and coaching programs for professional musicians to develop and maximize scaling of an online music education business through, *inter alia*, digital marketing, sales strategies, B2C Sales.  Specifically, by way of broad overview, Passion Builders provides multiple programs through which professional educations are provided with training and coaching that teaches them how to develop on online music education business, how to scale that business up to maximize revenue, how to effectively and successfully make sales of that business to potential consumers. For example, one such program is the "7 Figure Entrepreneurs Club."

19.    Through years of time, energy, and investment, Passion Builders developed and used reasonable steps to keep confidential its programs that utilize coaching frameworks and lesson content that is specialized for the types of students that enroll in Passion Builders.

20.    Through years of time, energy, and investment, Passion Builders has developed and used reasonable steps to keep confidential its marketing and sales related strategies, documents, and materials, such as sales scripts, methodologies for choosing the types of content in a particular type of advertising to maximize interest from potential consumers, methodologies for responding to questions from potential clients, methodologies for the selection of optimal targets for potential consumers, methodologies for the selection of the optimal times and dates for each type of advertising.

**COMPLAINT**

21.     Through years of time, energy, and investment, Passion Builders has developed and used reasonable steps to keep confidential its methodology underlying how its pricing is set and how it prices its programs.

22.     Prior to being provided access to Passion Builders' Trade Secrets and Confidential Information (as defined below), employees, consultants, vendors, and all persons and entities must agree to and execute a confidentiality and/or non-disclosure agreement.

23.     Passion Builders' Trade Secrets and Confidential Information (as defined below) are stored electronically (e.g., on servers, hard drives, etc.) and usernames and passwords are required for access.

24.     Brockman is a trumpet player that enrolled in a Passion Builders coaching program as a student in 2020.

25.     Brockman enjoyed significant success as a result of the Passion Builders program. *Inter alia*, prior to enrolling in the Passion Builders program, on information and belief, Brockman was not employed full-time in the music industry. However, as a result of the Passion Builders program, Brockman was able to begin working full time for himself as a musician, which was his desire.

26.     Brockman stated that a Passion Builders program was "the best investment" he had ever made and that, because of Passion Builders, he was able to increase his income from zero to about $10,000 a month in six months.

27.     Following the excellent results that Brockman experienced as a result of the Passion Builders program, in late 2021, Brockman approached Passion Builders to discuss becoming a coach with Passion Builders so that he could train others in Passion Builders programs and to act as a sales manager to enroll more students in the Passion Builders programs that had brought Brockman so much success.

28.     On January 15, 2022 Passion Builders and Brockman entered into a Contractor Agreement whereby Brockman would provide services to Passion

Builders as a "Client Success Manager & Team Advisor." A true and correct copy of the Contractor Agreement is attached hereto as **Exhibit A**.

29.    Brockman's roles and responsibilities pursuant to the Contractor Agreement included, *inter alia*: "Coaching clients for results," "Conducting sales calls / Enrolling and onboarding new clients," "Help researching & strategeizing [sic] to grow company," "Renewing existing client memberships," "Help with Ads, Emails, Social Media and Content Creation," "Monitor our public groups, skool, FB messenger, and mobile text services for other potential leads and opportunities," "Track all leads/clients via Sales CRM and keep profiles up to date with current status, notes, program recommendations, and next steps," "Check email, Facebook & Skool groups, and group chats for potential leads and engage with the leads," "Update Sales CRM with Lead information," and "Share any client wins, testimonials, and member success stories." Exh. A at ¶ 1.

30.    Pursuant to the terms of the Contractor Agreement, Brockman agreed that "[a]ny social media contacts, including 'followers' or 'friends,' that are acquired through accounts (including, but not limited to email addresses, blogs, Twitter, Facebook, YouTube, or other social media networks) used or created on behalf of Company are the property of the Company." Exh. A at ¶ 5.

31.    Pursuant to the terms of the Contractor Agreement, Brockman agreed that he would be provided with access to Passion Builders confidential information and that he was prohibited from divulging, disclosing, or communicating that confidential information:

> Contractor may have had access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Company. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Company, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical

7

**COMPLAINT**

information of the Company, and any and all trade secrets, customer lists, or pricing information of the Company. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. Contractor will protect such information and treat the Confidential Information as strictly confidential. Contractor will not solicit Company leads/customers or other Company employees/contractors for personal or business use. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, Contractor will return to Company all Confidential Information, whether physical or electronic, and other items that were used, created, or controlled by the Contractor during the term of this Agreement.

Exh. A at ¶ 6.

32.    Further, M.Brockman agreed that he would "not solicit Company leads/customers or other Company employees/contractors for personal or business use." Exh. A. at ¶ 6.

33.    In addition to the Contractor Agreement, Passion Builders and Brockman also entered into a Non-Disclosure, Non-Compete, and Non-Solicitation Agreement on January 1, 2023 (the "NDA"), a true and correct copy of which is attached hereto as **Exhibit B**.

34.    Pursuant to the terms of the NDA, Brockman recognized that he would be exposed to Passion Builders' Confidential Information, wherein Confidential Information was defined as "material or information that is valuable and unique to The Employer [Passion Builders] and not generally known in the industry at hand." Exh. B.

8

**COMPLAINT**

35. Pursuant to the terms of the NDA, Brockman agreed to keep Passion Builders' Confidential Information "in strict confidence" both during his time as a contractor with Passion Builders and for a period of two (2) years following termination of the working arrangement. Exh. B.

36. Pursuant to the terms of the NDA, Brockman agreed to not compete with Passion Builders while he was working with Passion Builders, wherein "compete with" was defined as "having ownership in, managing, consulting, coaching, being employed by, or rendering services to any organization or individual that is or was a client of The Employer, or is in a consulting business substantially similar to or competitive with The Employer." Exh. B.

37. Pursuant to the terms of the NDA, Brockman agreed that "[d]uring the working arrangement and for a period of 2 years following the expiration or termination of the working arrangement, The Signatory will not use the content taught in the programs and services of Passion Builders Online for the purpose of establishing a similar program or service, either independently or with another party while rendering services to another organization." Exh. B.

38. In reliance on Brockman's agreements to keep Passion Builders' Confidential Information in strict confidence, as well as in reliance on the other terms of the Contractor Agreement and NDA that Brockman agreed to, Passion Builders provided Brockman with access to Passion Builders' Confidential Information.

39. For nearly three years, Brockman worked with Passion Builders under the terms of the Consulting Agreement and NDA, and in that time, became intimately familiar with and used Passion Builders' Confidential Information to perform his role as a Client Success Manager & Team Advisor with Passion Builders. Brockman was paid for his work pursuant to the terms of the Contractor Agreement.

40.     Unfortunately, by November 2024, Defendants began taking active steps to create a directly competing copy-cat company to Passion Builders, without regard to the terms of the Consulting Agreement or NDA.

41.     On information and belief, on November 10, 2024, BrockConsulting was formed in Nevada, with Brockman listed as the sole managing member.

42.     On information and belief, Defendants registered the domain name www.brocksales.com to utilize as part of their efforts to directly compete with Passion Builders.

43.     Based on the publicly available WHOIS domain registration, www.brocksales.com was first registered on November 26, 2024.

44.     On November 28, 2024, Passion Builders discovered an online advertisement for a "Sales Strategy Session over Zoom" webinar being offered by Defendants on December 10, 11, and 12, 2024—the exact same dates as the Passion Builders webinar—at the website www.brocksales.com. That advertisement instructed potential consumers to "Schedule Your Free Sales Strategy Session" and to "Watch Matt's famous masterclass."

45.     On information and belief, the "Sales Strategy Session over Zoom" webinar offered by Defendants related to providing training and coaching programs for professional musicians to develop and maximize scaling of an online music education business through, *inter alia*, digital marketing, sales strategies, B2C Sales.

46.     On November 29, 2024, Passion Builders terminated the Consulting Agreement with Brockman.

47.     Since at least November 2024, Defendants have offered for sale, and sold programs to consumers in interstate commerce, that Defendants claim will train and coach those consumers how to develop on online music education business, how to scale that business up to maximize revenue, and how to effectively and successfully make sales of that business to potential consumers. These programs are copies of Passion Builders' programs and directly compete against Passion Builders.

48.     On information and belief, one of Defendants' programs is titled "B2C Sales Bootcamp" and is offered through the online platform www.skool.com.

49.     On information and belief, one of Defendants' programs is titled "7 Figure Creative Coaches" and is offered through the online platform www.skool.com.

50.     Collectively, the "B2C Sales Bootcamp," "7 Figure Creative Coaches," and any other similar programs offered by Defendants through their websites or through the www.skool.com platform, are referred to as Defendants' "Competing Products and Services."

51.     Passion Builders has been harmed by Brockman's breach of the terms of the Consulting Agreement and NDA.

**Defendants' Misappropriation of Trade Secrets**

52.     Pursuant to the terms of the NDA, Brockman agreed to keep Passion Builders' Trade Secrets in strict confidence, wherein Trade Secrets were defined as "a formula, practice, process, design, instrument, pattern, commercial method, or compilation of information that is not generally known or reasonably ascertainable by others, and by which a business can obtain an economic advantage over competitors or customers." Exh. B.

53.     In reliance on Brockman's agreements to keep Passion Builders' Trade Secrets in strict confidence, as well as in reliance on the other terms of the Contractor Agreement and NDA that Brockman agreed to, Passion Builders provided Brockman with access to Passion Builders Trade Secrets, including but not limited to internal coaching frameworks and lessons, sales scripts, client CRM data, pricing structures, marketing materials and strategies, ad targeting data, ad targeting strategies, and testimonial assets.

54.     For nearly three years, Brockman worked with Passion Builders under the terms of the Consulting Agreement and NDA, and in that time, became intimately familiar with and used Passion Builders' Trade Secrets to perform his

11

**COMPLAINT**

role as a Client Success Manager & Team Advisor with Passion Builders. Brockman was paid for his work pursuant to the terms of the Contractor Agreement.

55.    By way of nonlimiting example, while still under the terms of his consulting arrangement, Brockman became aware that Passion Builders would be offering a sales webinar on Saturday November 31, 2024 at 9:00 AM PT, and that Passion Builders had utilized its Trade Secret marketing strategies, including know-how gained from years of data from prior program offerings, to select that date and time as having an optimal return on investment in the form of a high conversation rate from potential consumers into purchasers. Defendants then scheduled a directly competing webinar at the same date and time.

56.    In another example, on November 27, 2024, Brockman contacted Mr. Nowell asking for specific details on Passion Builders' Trade Secret ad targeting strategies. Believing that Brockman intended to use that information as part of his duties with Passion Builders, Mr. Nowell revealed those details. On information and belief, Defendants then used those same ad targeting strategies to target potential consumers for Defendants' Competing Products and Services.

57.    Based on information and belief, Defendants are utilizing Passion Builders' Trade Secret teaching frameworks and lesson content in Defendants' Competing Products and Services.

58.    Based on information and belief, Defendants are utilizing Passion Builders' Trade Secret marketing and advertising strategies and methodologies in support of Defendants' Competing Products and Services.

59.    Based on information and belief, Defendants are utilizing Passion Builders Trade Secrets and confidential methodology that underlies how to set pricing in support of Defendants' Competing Products and Services.

60.    Given the massive extent of Defendants' misappropriation and misuse of Passion Builders' Trade Secrets, Defendants' misappropriation is willful and malicious.

61.     In sum, Defendants have willfully and maliciously taken wide swathes of Passion Builders' Trade Secrets to create directly competing copy-cats of Passion Builders' programs.

62.     Passion Builders has been harmed as a result of Defendants' misappropriation.

## **Defendants' False and Misleading Claims,**
## **Unfair Competition, and Unjust Enrichment**

63.     In connection with the advertising of Defendants' Competing Products and Services, Defendants have engaged in a pervasive scheme to wrongfully claim themselves as the source of the results earned by students who participated in the Passion Builders program(s). Specifically, Defendants misleadingly inform potential consumers that various successful individuals who participated in the Passion Builders program(s) learned their skills from Defendants, when, in reality, those individuals learned those skills by participating in Passion Builders' program(s). At best, those Passion Builders students had communications with Brockman because of his role as a Passion Builders' consultant, and skills allegedly learned from Brockman during that time were as a result of Brockman providing those students with information, instruction, and coaching from Passion Builders' programs.

64.     For example, embedded in the November 28, 2024 advertisement for Defendants' "Sales Strategy Session over Zoom" webinar was a testimonial video wherein the person speaking, Jameson Scriver—states that "Matt Brockman was the first person who taught me the skill of sales, and in my first year as a sales rep, I closed around $750,000 revenue." However, Mr. Scriver was a prior student and vendor of Passion Builders who, on information and belief, was first taught the "skill of sales" through the Passion Builders program, and worked his "first year as a sales rep" following his completion of the Passion Builders program and prior to Defendants offering their Competing Products and Services.

65.     On information and belief, Mr. Scriver did not purchase or receive Defendants' Competing Products and Services prior to making the testimonial video featured in the November 28, 2024 advertisement.

66.     The testimonial embedded in the November 28, 2024 advertisement is false and/or misleading, because potential consumers viewing that advertisement are likely to be misled that the speaker learned his skills and achieved his results from purchasing Defendants' Competing Products and Services. Instead, the speaker in the testimonial learned his skills and achieved his results from taking the Passion Builders program.

67.     On information and belief, one of the methods by which Defendants advertise or market their Competing Products and Services is to offer a free introductory webinar during which the Defendants provide an overview of what their products and services are. Thereafter, attendees of the webinar are contacted by Defendants in an effort to sell Defendants' paid Competing Products and Services.

68.     In addition to providing an overview of Defendants' Competing Products and Services, the free webinars provide testimonials and reviews from individuals whom Defendants claim achieved success as a result of Defendants' Competing Products and Services.

69.     However, on information and belief, many of those individuals never purchased, received, or used Defendants' Competing Products and Services.

70.     For example, in their webinars, Defendants repeatedly claim that Mr. Scriver's successes result from his use of Defendants Competing Products and Services. Below is a screenshot captured from one of Defendants' webinars, wherein Brockman is the speaker depicted in the upper right corner who states that "Jameson here is making $25,000 a month with a jazz drum set offer after I taught him the skill of sales":

/ / /

/ / /



71.     In another example, Damani Rhodes is a drummer who participated in the Passion Builders program and, on information and belief, has never purchased, received, or used Defendants' Competing Products and Services. However, Defendants repeatedly claim that Mr. Rhodes's successes result from his use of Defendants Competing Products and Services.

72.     Below are several screenshots captured from Defendants' webinars wherein Defendants falsely claim that their Competing Products and Services resulted in Mr. Rhodes's success:

/ / /

/ / /

/ / /

15

**COMPLAINT**



73.     The photo featured in the above screenshots depicts Mr. Rhodes on the left and Brockman on the right, with two individuals whose faces are blurred out in between them. The two individuals whose faces are blurred out are Mr. Nowell and a Passion Builders student. This photo was taken by Passion Builders at a Passion Builders-hosted event.

74.     In another example, during a webinar, Defendants showed images of positive reviews from an individual identified as "Cameron" and claimed that the reviews were for Defendants' Competing Products and Services. Simultaneous with

16

showing the images of the reviews from "Cameron," Defendants stated: "I started training other beginning entrepreneurs like this, like Cameron here who's selling a metal drumming offer, he made four sales in a month, three of them paid in full."

75.    However, on information and belief, Cameron has never purchased, received, or used Defendants' Competing Products and Services. Instead, Cameron was a Passion Builders student, and the images of Cameron's reviews were for Passion Builders' products and services.

76.    On information and belief, the images of Cameron's reviews are screenshots from Passion Builders' internal documents, and thus, Defendants were fully aware that these were not reviews of Defendants' products or services.

77.    In another example, Defendants included a slide in Defendants' webinar depicting numerous positive reviews that Defendants claim were for Defendants' Competing Products and Services. However, the reviews are for Passion Builders' products or services. A screenshot taken from Defendants' webinar showing this slide is below:



**COMPLAINT**

78.    In another example, during a webinar, Defendants stated the following: "we have also helped people with, this is one guy who like has slinky juggling stuff, like he had a juggling offer, so that's a non-music offer who I've been involved with . . . . so this business model absolutely does work."  However, on information and belief, the person referred to by Defendants in this portion of the webinar is a former student of Passion Builders and has never purchased, received, or used Defendants' Competing Products and Services.

79.    In yet another example, Defendants stated the following: "my record is, some, this guy named Nick, he's a saxophone player, and he made his first sales two days after joining me and just immediately implementing what he learned. So, you can make serious money, can start making money with this immediately." However, on information and belief, the person referred to as "Nick" by Defendants in this portion of the webinar is a formed student of Passion Builders and has never purchased, received, or used Defendants' Competing Products and Services.

80.    One of the methods by which Defendants advertise or market their Competing Products and Services is via online advertising.

81.    Defendants launched an advertisement that states the following: "Jameson was able to get to $25k a month teaching how to play jazz drum set once he adapted this model" and "Damani here who went from break even to 7 figures a year with a drum set coaching business" and "These results are real. And you don't have to take it to crazy numbers like myself or some of my students, but ask yourself this. If all it did was replace your current income and reduce stress and anxiety from your life, would it be worth it? If so, you're not going to want to miss the live class."

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    However, as explained above, on information and belief, neither Mr. Scriver

20  nor Mr. Rhodes purchased, received, or used Defendants' Competing Products and

21  Services prior to achieving the milestones claimed in Defendants' advertisements.

22    82.    Defendants launched another advertisement that states the following:

23  "Damani who made it to seven figures, $100,000 a month with a drum set coaching

24  program. . . This works, guys. It's getting real results. . . So, if you're curious how to

25  do this, I'm teaching a live presentation where I'm going to go live on Zoom. I'm

26  going to share with you all my business secrets, and you can ask me as many

27  questions as you like as well." (emphasis added). However, again, on information

28

and belief, Mr. Rhodes never purchased, received, or used Defendants' Competing Products and Services.

83.     By way of non-limiting example, in April 2025, Defendants launched at least eleven different advertisements on Meta/Facebook claiming that Mr. Scriver and/or Mr. Rhodes achieved success as a result of Defendants' Competing Products and Services.

84.     On information and belief, Defendants are continuing to launch online advertising that includes the foregoing misleading statements.

85.     On information and belief, after Defendants determine the identity of a person that they believe is a potential customer for their Competing Products and Services, Defendants attempt to speak directly to that potential customer via either telephone or other telecommunications method.

86.     On information and belief, potential customers who speak with Defendants are told the same misleading information as described above, including, *inter alia*, that Mr. Rhodes and others are former students of Defendants and have achieved success by implementing Defendants' Competing Products and Services.

87.     On information and belief, Defendants use these false and misleading testimonials and reviews in an effort to mislead consumers as to the source or quality of the products and services being offered by Defendants, so that those consumers would purchase Defendants' Competing Products and Services.

88.     On information and belief, Defendants' false and misleading claims of success by prior students of the Passion Builders program(s) are included in virtually every one of Defendants' webinars and online advertisement.

89.     At all times, Defendants were aware that the individuals featured in the testimonials and reviews had not used Defendants' Competing Products and Services, and thus, the inclusion of those testimonials and reviews was knowing and willful.

90.     Not only have Defendants wrongfully claimed the successes of Passion Builders' students as their own, Defendants also wrongfully inflated their bona fines to potential consumers by claiming to have co-founded Passion Builders. The below are screenshots taken of publicly available websites associated with Defendants:





91.     Brockman is not a co-founder of Passion Builders.

/ / /

**COMPLAINT**

92.     On information and belief, during calls between Defendants and potential consumers wherein Defendants are attempting to sell Defendants' products or services, Defendants have informed those potential consumers that Defendants are associated or affiliated with Passion Builders. For example, at least one potential consumer from a state in the United States outside of California informed Passion Builders that she was told by Defendants that Defendants and Passion Builders were "together." These statements are false.

93.     Plaintiff has communicated with or received communications from several potential consumers and purchasers of the Passion Builders program(s) who have informed Plaintiff that Defendants advertising and statements resulting in confusion as to whether Defendants were affiliated with or otherwise connected with Plaintiff. For example, one of Plaintiffs' students contacted Plaintiff to ask if Defendants' Competing Products and Services were "part of" the Passion Builders program that she had already paid for: "Have a question: is Matt Brockman part of my [Passion Builders] education? Or, separately thing. He is sending me mail almost every day and I did watch some of the free presentation but it seems like eventually I have to pay for his coaching which I already paid into. I have sent message saying that I have already joined in the system but maybe he either didn't read it or ignoring it." In another example, a non-party commented on one of Plaintiffs' Meta/Facebook advertisements "Sounds just like Matt Brockman."

94.     This confusion in the market has harmed Plaintiff's goodwill, reputation, and business

95.     On information and belief, Defendants' false or misleading advertising was and is being run nationwide.

96.     On information and belief, Defendants' Competing Products and Services are purchasable by consumers nationwide.

97.     In sum, Defendants are engaged in a wide-reaching, multi-pronged scheme to mislead and confuse potential consumers about the source, nature, and/or

qualities of Defendants' Competing Products and Services. Given the pervasiveness of the false or misleading statements, and Defendants' clear knowledge of that falsity, Defendants' actions are exceptional.

98.   Not only are Defendants engaged in false or misleading advertising as described above, Defendants have also unjustly enriched themselves by the foregoing acts.

99.   Further, Defendants have unjustly enriched themselves by copying Passion Builders content and using it for Defendants' benefit.

100.   Based on information and belief, Defendants have copied the Passion Builders lesson content.

101.   Based on information and belief, Defendants have copied the content of Passion Builders' student agreements.

102.   On information and belief, generally, potential consumers ultimately purchase either Plaintiffs' produce and services *or* Defendants' Competing Products and Services, but not both.

## FIRST CAUSE OF ACTION

### (Trade Secret Misappropriation in Violation of the
### Defend Trade Secrets Act [18 U.S.C. § 1836 et seq.])
### (By Plaintiff Against All Defendants)

103.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 62 above as though fully set forth herein.

104.   Passion Builders' Trade Secrets described herein comprise a formula, pattern, business data compilation, program, device, method, technique, invention, plan, procedure and process.

105.   Passion Builders' Trade Secrets described herein are used in, related to, and intended for use in interstate commerce.

106.   Plaintiff derives independent economic value from the Trade Secrets because they are not generally known to, and are not readily ascertainable through

**COMPLAINT**

proper means by, other persons who may be able to obtain economic value from their disclosure or use.

107.   Passion Builders' Trade Secrets have been and continue to be the subject of Plaintiff's reasonable measures to keep such information secret, including by limiting access to the Trade Secrets only to persons with a need-to-know, and who agree and covenant in writing to maintain the secrecy of the Trade Secrets.

108.   Defendant Brockman learned Passion Builders' Trade Secrets only after agreeing in writing and covenanting not to disclose the Trade Secrets and that he would maintain the confidentiality of the Trade Secrets.

109.   Defendants misappropriated and continue to misappropriate Passion Builders' Trade Secrets in connection with their directly competing business, for their improper gain.

110.   Defendants knew that the retention, disclosure, or use of Passion Builders' Trade Secrets was in violation of Brockman's written agreements and Plaintiff's policy to maintain the confidentiality of the Confidential Information.

111.   Defendants' misappropriation is willful and malicious.

112.   As a direct and proximate result of the foregoing, Plaintiff has sustained severe economic injury for which it is entitled to monetary compensation in an amount to be determined at trial, but which, on information and belief, is in excess of $75,000.

113.   Plaintiff is also entitled to the return of any and all property and information wrongfully converted, as well as a preliminary and permanent injunction to prevent further unlawful use of Plaintiff's Trade Secrets.

/ / /

/ / /

/ / /

/ / /

/ / /

**COMPLAINT**

## SECOND CAUSE OF ACTION

### (Trade Secret Misappropriation in Violation of California Uniform Trade Secrets Act [Cal. Civ. Code §§ 3426-3426.11])

### (By Plaintiff Against All Defendants)

114.    Plaintiff incorporates by reference the allegations in paragraphs 1-62 and 103-113 above as though fully set forth herein.

115.    Plaintiff is the owner of the Trade Secrets.

116.    The Trade Secrets were trade secrets at the time of the misappropriation.

117.    Defendants improperly acquired, used, and/or disclosed the Trade Secrets.

118.    Plaintiff was harmed by Defendants' acts, wherein Defendants' improper acquisition, use, and/or disclosure of the Trade Secrets was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

### (By Plaintiff Against Defendant Brockman)

119.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 102 above as though fully set forth herein.

120.    Plaintiff and Brockman executed the Contractor Agreement on January 15, 2022.

121.    Plaintiff and Brockman executed the NDA on January 1, 2023.

122.    Plaintiff performed all of its contractual obligations under both the Consulting Agreement and the NDA.

123.    Brockman breached the confidentiality and non-solicitation terms of the Consulting Agreement.

124.    Brockman breached at least the confidentiality and trade secret terms and the non-compete terms of the NDA.

125.   As a result of Brockmans's breaches of the Contractor Agreement and NDA, Plaintiff has been harmed and suffered damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**(False Advertising in Violation of 15 U.S.C. § 1125(a))**

**(By Plaintiff Against All Defendants)**

126.   Plaintiff incorporates by reference the allegations in paragraphs 1-51 and 63-102 above as though fully set forth herein.

127.   The acts of Defendants as alleged herein constitute false advertising in violation of the 15 U.S.C. § 1125(a).

128.   Defendants' dissemination of the false or misleading claims in connection with the advertising of Defendants' Competing Products and Services constitutes false or misleading representation of fact in a commercial advertising or promotion, where Defendants' false or misleading claims misrepresent the source, nature, and/or qualities of Defendants' Competing Products and Services.

129.   Defendants' false or misleading claims are likely to cause consumer confusion and deceive consumers in material way.

130.   Defendants have disseminated the false or misleading claims in interstate commerce.

131.   Defendants have caused, and will continue to cause, immediate and irreparable competitive or commercial injury to Plaintiff, including injury to Plaintiff's business, reputation, and goodwill, for which there is no adequate remedy at law. Plaintiff is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants from engaging in future acts of false advertising and ordering removal of all of Defendant's false or misleading claims.

132.   As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial but which includes (a) all damages to Plaintiff, including damage to reputation or goodwill and

26

**COMPLAINT**

diverted sales and lost profits to Plaintiff as a result of the false or misleading advertising; (b) all profits earned by Defendants as a result of its false or misleading advertising; (c) and appropriate corrective advertising awards to correct the false and injurious advertising campaign that Defendants have undertaken. On information and belief, Plaintiff's damages are in excess of $75,000.

133.    Defendants' conduct is willful entitling Plaintiff to a trebling of all damages awards under 15 U.S.C. § 1117, and, in light of the Defendants' conduct rendering this an exceptional case, an award of attorneys' fees.

## FIFTH CAUSE OF ACTION

### (False and Misleading Advertising in Violation of

### Cal. Bus. & Prof. Code § 17500)

### (By Plaintiff Against All Defendants)

134.    Plaintiff incorporates by reference the allegations in paragraphs 1-51, 63-102, and 127-133 above as though set forth fully herein.

135.    Defendants violated Cal. Bus. & Prof. Code § 17500 by making or disseminating or causing to be disseminated before the public in this state, deceptive, untrue or misleading statements about the nature, characteristics and qualities of Defendants' Competing Products and Services, in connection with the commercial advertising or promotion of Defendants' Competing Products and Services.

136.    Defendants knew or in the exercise of reasonable care should have known the false or misleading statements were deceptive, untrue or misleading and would be likely to mislead or deceive a reasonable customer.

137.    By reason of Defendants' deceptive, untrue, and misleading advertising, Plaintiff has suffered and will continue to suffer irreparable injury. Defendants' continuing acts of deceptive, untrue and misleading advertising, unless enjoined, will cause irreparable damage to Plaintiff in that it will have no adequate remedy at law to compel Defendants to cease such acts, and no way to determine its

27

**COMPLAINT**

losses caused by such Defendants. Plaintiff is therefore entitled to a preliminary injunction and a permanent injunction against further deceptive, untrue and misleading advertising by Defendants.

138.   As a direct and proximate result of Defendants' deceptive, untrue and misleading advertising, Defendants have harmed Plaintiff by, *inter alia*, wrongfully taking Plaintiff's profits and its substantial investment of time, energy and money. Plaintiff therefore asks that the Court also impose such other relief as may be just and proper for Defendants' violation of Cal. Bus. & Prof. Code § 17500, including restitution in an amount to be proved at trial, but which, on information and belief, is in excess of $75,000.

## SIXTH CAUSE OF ACTION

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200)

### (By Plaintiff Against All Defendants)

139.   Plaintiff incorporates by reference the allegations in paragraphs 1-51 and 63-102 above as though fully set forth herein.

140.   The acts of Defendants described in paragraphs 1-51 and 63-102 above constitute unfair and/or unlawful anticompetitive business practices in violation of Cal. Bus. & Prof. Code § 17200.

141.   Defendants' actions described herein constitute unfair anticompetitive business practices as Defendants have made false and misleading misrepresentations about source, nature, and/or qualities of Defendants' Competing Products and Services. Defendants' actions described herein have injured Plaintiff and others in the marketplace because they have competed using false or misleading advertising, thus acquiring customers through unfair means.

142.   Defendants' action described herein constitute unfair anticompetitive business practices as Defendants have wrongfully copied Plaintiffs' content and used it for Defendants' benefit, thus acquiring customers through unfair means.

143.   Defendants' actions described herein constitute unlawful anticompetitive business practices, for at least the following violations: Defendants competed unlawfully for purposes of this cause of action on the basis that Defendants have violated 15 U.S.C. § 1125, which prohibits false or misleading advertising.

144.   By reason of Defendants' unfair and/or unlawful anticompetitive business practices, Plaintiff has suffered and will continue to suffer irreparable injury. Defendants' continuing acts of unfair and/or unlawful business practices, unless enjoined, will cause irreparable damage to Plaintiff in that it will have no adequate remedy at law to compel Defendants to cease such acts, and no way to determine its losses caused by such Defendants. Plaintiff is therefore entitled to a preliminary injunction and a permanent injunction against further unfair and/or unlawful business practices by Defendants.

145.   As a direct and proximate result of Defendants' unfair and/or unlawful anticompetitive business practices, Defendants have harmed Plaintiff by, *inter alia*, wrongfully taking Plaintiff's profits and its substantial investment of time, energy and money. Plaintiff therefore asks that the Court also impose such other relief as may be just and proper for Defendants' violation of Cal. Bus. & Prof. Code § 17200, including restitution in an amount to be proved at trial, but which, on information and belief, is in excess of $75,000.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

### (By Plaintiff Against All Defendants)

146.   Plaintiff incorporates by reference the allegations in paragraphs 1-51 and 63-102 above as though fully set forth herein.

147.   In the alternative to the foregoing, Defendants actions as described in paragraphs 1-51 and 63-102 above (excluding the allegations of trade secret misappropriation) resulted in Defendants' unjust enrichment.

148.   It would be unjust to allow Defendants to retain the benefit received from increased sales driven in part or in whole by misleading potential consumers that the source, nature, and/or qualities of Defendants' Competing Products and Services, rather than from Plaintiff.

149.   It would be unjust to allow Defendants to retain the benefit received from increased sales driven in part or in whole by misleading consumers that Defendants are associated or affiliated with Passion Builders.

150.   It would be unjust to allow Defendants to retain the benefit received from increased sales driven in part or in whole by misleading consumers that Brockman was the co-founder or an officer of Passion Builders.

151.   It would be unjust to allow Defendants to retain the benefit received by copying Passion Builders' content and using it for Defendants' benefit.

152.   The principles of equity require Defendants to make restitution for the benefits conferred to it by Plaintiff in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For an order preliminarily and permanently enjoining Defendants from engaging in the unlawful conduct described herein;

2.     For damages in the form of actual damages suffered by Plaintiff and/or Defendant's profits, in an amount to be determined at trial;

3.     For disgorgement and restitution in an amount to be determined at trial;

4.     For a finding that Defendants' acts were willful and malicious, for a doubling of damages arising from Defendants' trade secret misappropriation, and for an award of attorneys' fees and costs based thereon;

5.     For an order deeming this case exceptional, for a trebling of damages arising from Defendants' false or misleading advertising, and an award of attorneys' fees and costs;

/ / /

6. For attorneys' fees and costs of suit herein; and

7. For such other relief as is necessary.

Dated:  June 6, 2025                          **ONE LLP**

                                             By: /s/ Jennifer A. Mauri
                                                 Jennifer A. Mauri
                                                 John Tehranian
                                                 Attorneys for Plaintiff,
                                                 Hollywood Universe Media, LLC, d/b/a
                                                 Passion Builders Online

**COMPLAINT**

1

## <u>DEMAND FOR JURY TRIAL</u>

2    Plaintiff hereby demands a trial by jury as to all claims and all issues properly

3    triable thereby.

4

5    Dated:  June 6, 2025                    **ONE LLP**

6

7                                             By: <u>/s/ Jennifer A. Mauri</u>
                                                  Jennifer A. Mauri
8                                                 John Tehranian
                                                  Attorneys for Plaintiff,
9                                                 Hollywood Universe Media, LLC, d/b/a
                                                  Passion Builders Online
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**